# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CU NGUYEN, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No.: 3:18-cv-00590-H-KSC <br><br> **ORDER:** <br><br> **(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; and** <br><br> [Doc. No. 14] <br><br> **(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** <br><br> [Doc. No. 21] |

On March 21, 2018, Plaintiff Cu Nguyen ("Plaintiff") filed a complaint against Defendant Nancy A. Berryhill, the Acting Commissioner of Social Security ("the Acting Commissioner" or "Defendant"), seeking judicial review of an administrative denial of disability benefits under the Social Security Act ("SSA"). (Doc. No. 1.) On June 26, 2018,

1

the Acting Commissioner answered Plaintiff's complaint and lodged the administrative record. (Doc. Nos. 9, 10.) On October 12, 2018, Plaintiff filed a motion for summary judgment, asking the Court to reverse the Acting Commissioner's final decision and direct the Social Security Administration to award benefits. (Doc. No. 14.) On January March 21, 2019, the Acting Commissioner cross-moved for summary judgment, asking the Court to affirm the Acting Commissioner's final decision. (Doc. No. 21.) For the reasons below, the Court denies Plaintiff's motion for summary judgment, grants the Acting Commissioner's cross-motion for summary judgment, and affirms the Acting Commissioner's final decision.

## BACKGROUND

On August 29, 2013, Plaintiff applied for disability insurance benefits and supplemental security income, claiming a disability onset date of May 15, 2011. (Doc. No. 10-2 at 48, 10-5 at 1–21.) The Social Security Administration ("SSA") initially denied Plaintiff's application on December 30, 2013 and denied reconsideration on April 24, 2014. (Doc. No. 10-4 at 2–6, 9–13.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on June 24, 2014. (Id. at 17–18.) The ALJ held a hearing on Plaintiff's application on August 30, 2016. (Doc. No. 10-2 at 54–96.) Plaintiff testified at the hearing with an interpreter and was represented by counsel. (Id.)

The ALJ also heard testimony from Dr. John Simonds, an independent medical expert, and Mark Remas, an independent vocational expert. (Id.) On September 22, 2016, the ALJ issued a written decision analyzing Plaintiff's claim and determining that Plaintiff had not met his burden. (Id. at 32–53.) SSA regulations require ALJs to use the following five-step inquiry when determining whether an applicant qualifies for disability benefits: (1) has the claimant been gainfully employed since the time of the disability onset date; (2) "is the claimant's impairment severe"; (3) "does the impairment 'meet or equal' one of a list of specific impairments described in the regulations," and if not, what is the claimant's

residual functional capacity ("RFC")[1]; (4) is the claimant capable of performing past relevant work; and (5) "is the claimant able to do any other work." <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999); <u>see</u> 20 C.F.R. § 404.1520(a)(4)(i)–(v).

Here, the ALJ determined at step one that the Plaintiff had not been gainfully employed since the disability onset date of May 15, 2011. (Doc. No. 10–2 at 37.) At step two, the ALJ found that Plaintiff had the following severe impairments: depression, post-traumatic stress disorder ("PTSD"), and schizophrenia. (<u>Id.</u> at 37–38.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that amounted to one of the SSA regulations' enumerated impairments. (<u>Id.</u> at 39–41.) The ALJ then determined that Plaintiff had a residual functional capacity ("RFC") to perform "medium work," as defined in 20 C.F.R. 404.1567(b), "except [that he] is limited to simple, repetitive tasks, in a non-public setting." (<u>Id.</u> at 41–47.) At step four, the ALJ determined that Plaintiff is capable of performing past relevant work as a cleaner. (<u>Id.</u> at 47.) Consequently, the ALJ determined that Plaintiff was not disabled from May 15, 2011, the alleged onset date, through September 22, 2016, the date of the ALJ's decision. (<u>Id.</u> at 47–48.) On January 29, 2018, the Social Security Appeals Council then denied Plaintiff's request for review, rendering the ALJ's decision final. (Doc. No. 10-2 at 2–7.)

## **LEGAL STANDARDS**

### **A. The Social Security Administration's Sequential Five-Step Inquiry**

The SSA employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits under the Act. 20 C.F.R. § 404.1520(a)(4)(i)–(v). To qualify for disability benefits, a claimant must establish that he or she is "disabled," meaning that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

---

[1] SSA regulations define residual functional capacity as "the most you can still do despite your limitations." 20 C.F.R. § 416.945(a)(1).

months." 42 U.S.C. § 423(d)(1)(A); see Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995).

Step one in the sequential evaluation considers a claimant's "work activity, if any." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). An ALJ will deny a claimant disability benefits if the claimant is engaged in "substantial gainful activity." Id. §§ 404.1520(b), 416.920(b).

If a claimant cannot provide proof of gainful work activity, the ALJ proceeds to step two to ascertain whether the claimant has a medically severe impairment or combination of impairments. Id. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The so-called "severity regulation" dictates the ALJ's step-two analysis. Bowen v. Yuckert, 482 U.S. 137, 140–41 (1987). Specifically, an ALJ will deny a claimant's disability claim if the ALJ does not find that a claimant suffers from a severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

If the impairment is severe, however, the evaluation proceeds to step three. At step three, the ALJ determines whether the impairment is equivalent to one of several enumerated impairments that the SSA deems so severe as to preclude substantial gainful activity. Id. §§ 404.1520(d), 416.920(d). An ALJ conclusively presumes a claimant is disabled if the impairment meets or equals one of the enumerated impairments. Id.

If the ALJ concludes that a claimant does not suffer from one of the SSA regulations' enumerated severe impairments, the ALJ must determine the claimant's RFC before proceeding to step four of the inquiry. Id. §§ 404.1520(e), 416.920(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. See id. §§ 404.1545(a)(1), 416.945(a)(1). The RFC analysis considers whether the claimant's "impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what [the claimant] can do in a work setting." Id. In establishing a claimant's RFC, the ALJ must assess relevant medical and other evidence, as well as consider all of the

claimant's impairments, including impairments categorized as non-severe. Id. §§ 404.1545(a)(3)–(4), (e), 416.945(a)(3)–(4), (e).

Given the claimant's RFC, the ALJ determines at step four whether the claimant has the RFC to perform the requirements of his or her past relevant work. Id. §§ 404.1520(f), 416.920(f). If a claimant has the RFC to carry out his or her past relevant work, the claimant is not disabled. Id. Conversely, if the claimant does not have the RFC to perform his or her past relevant work, or does not have any past relevant work, the analysis presses onward.

At the fifth and final step of the SSA's inquiry, the ALJ must determine whether the claimant is able to do *any* other work in light of his or her RFC, age, education, and work experience. Id. §§ 404.1520(a)(4)(v), (g)(1), 416.920(a)(4)(v), (g)(1). If the claimant is able to do other work, the claimant is not disabled. Id. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). However, if the claimant is not able to do other work and meets the duration requirement of twelve months, the claimant is disabled. Id. Although the claimant generally continues to have the burden of proving disability at step five, a limited burden shifts to the SSA, such that the SSA must present evidence demonstrating that other jobs the claimant can perform—allowing for RFC, age, education, and work experience—exist in significant numbers in the national economy. Tackett, 190 F.3d at 1099.

B. **Standard of Review**

Unsuccessful applicants for social security disability benefits may seek judicial review of a Commissioner's final decision in a federal district court. See 42 U.S.C. § 405(g). "As with other agency decisions, federal court review of social security determinations is limited." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). The court will "disturb the Commissioner's decision to deny benefits 'only if it is not supported by substantial evidence or is based on legal error.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews, 53 F.3d at 1039). The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's determination. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222 (quoting Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007)). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Garrison, 759 F.3d at 1010 (quoting Shalala, 53 F.3d at 1039).

Even if the ALJ commits legal error, a reviewing court will uphold the decision where that error is harmless—that is, where the error is "inconsequential to the ultimate nondisability determination." Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Id. at 1111 (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

## **DISCUSSION**

Plaintiff argues that the ALJ improperly weighed the medical evidence and improperly discounted Plaintiff's complaints as well as lay testimony. (Doc. No. 14-1 at 11–28.) Defendant argues that the ALJ appropriately weighed the competing medical evidence in the record, and that the ALJ's final decision is supported by substantial evidence. (Doc. No. 21 at 9–32.) For the following reasons, the Court denies Plaintiff's summary judgment motion and grants the Acting Commissioner's cross-motion.

**A. Findings Based on Medical Evidence**

Plaintiff argues that the ALJ improperly selected portions of medical evidence while ignoring other evidence. (Doc. No. 14-1 at 8–11.) Specifically, Plaintiff argues that the ALJ focused on Dr. Grace Ning's evaluation of Plaintiff on August 1, 2013, in which she assigns him a global assessment functioning (GAF) score of 60, but that the ALJ did not evaluate Dr. Ning's overall medical record of Plaintiff and did not properly consider

Plaintiff's subsequent evaluations by medical professionals. (Doc. No. 14-1 at 8–18, 20–21.) Defendant argues that Plaintiff fails to provide legal error with the ALJ's evaluation of the medical evidence. (Doc. No. 21-1 at 7–20.)

Generally, treating sources are accorded more weight "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527. However, "[a]lthough the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (internal quotations and citations omitted). An ALJ can give more weight to an opinion that is supported by medical signs or is more consistent with the overall record. See 20 C.F.R. § 404.1527(c)(3), (c)(4). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (quoting Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magnallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).

Here, the ALJ's interpretation of the medical evidence is supported by substantial evidence included in his factual findings. The ALJ found that, although Plaintiff had severe impairments of depression, PTSD, and schizophrenia, Plaintiff could perform simple, repetitive tasks, in a non-public environment. (Doc. No. 10-2 at 37, 41.) The ALJ noted that Plaintiff had a long history of mental illness and that, in 2011, Dr. Ning reported that Plaintiff "presented with symptoms of depression and anxious mood, poor sleep, bizarre

behaviors, auditory and visual hallucinations, social isolation and difficulty [with] concentration." (Id. at 42.) Plaintiff's condition stabilized with medication. (Id.) In 2013, Dr. Ning's notes indicated that, although Plaintiff needs reminders and prompts, had difficulty establishing and maintaining relationships, and had difficulty with decision-making and communication when his symptoms are exacerbated, Plaintiff can follow basic written and oral instructions in Vietnamese, and can complete basic tasks when his mental condition is stable. (Doc. No. 10-7 at 21.) The ALJ gave significant weight to the opinion evidence of Dr. Ning because she "had the opportunity to treat [Plaintiff] over time and is familiar with [Plaintiff's] full medical condition". (Doc. No. 10-2 at 43.) The ALJ reasonably gave significant weight to Dr. Ning's opinion based on her extended treatment of Plaintiff and based on the treatment record which indicated that Plaintiff's symptoms stabilized when taking medication. See 20 C.F.R. §§ 404.1527(c)(2), (3), (4). In addition, it was a rational interpretation by the ALJ to find that Dr. Ning's opinion supported a finding that Plaintiff could perform simple, repetitive tasks in a non-public setting. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).

      The ALJ partially incorporated Dr. Henderson's opinion. (Doc. No. 10-2 at 44.) Dr. Henderson concluded that Plaintiff had a moderate inability to perform simple repetitive tasks. (Doc. 10-8 at 107.) The ALJ incorporated this opinion into his findings. (Doc. No. 10-2 at 44.) The ALJ rejected Dr. Henderson's remaining limitations because they were not supported by the overall record. (Id.) The ALJ permissibly resolved conflicts in favor of the longitudinal treatment record that Plaintiff received at the Union of Pan Asian Communities ("UPAC"). See Molina, 674 F.3d at 1111. Similarly, the ALJ gave little weight to Plaintiff's psychological evaluation by Milton Lessner, Ph.D. (Doc. No. 10-2 at 44.) The ALJ noted that Dr. Lessner only met with Plaintiff once, and permissibly resolved conflicts between Dr. Lessner's findings and the UPAC examination findings in favor of the longitudinal record at UPAC. See Molina, 674 F.3d at 1111.

      The ALJ further supported his determination of Plaintiff's residual functioning capacity. The ALJ gave partial weight to the opinions of two doctors that reviewed

Plaintiff's record because the opinions were supported by medical evidence and the treatment record. (Doc. No. 10-2 at 43.) The ALJ also gave partial weight to the testimony of Dr. John Simonds, a specialist in psychiatry, whose testimony the ALJ found consistent with the medical record. (Id. at 46.) The ALJ noted that "Dr. Simonds opined that the claimant would be able to perform simple and repetitive work in a non-public setting."[2] (Id.) The ALJ permissibly found that Dr. Simonds assignation of moderate to marked limitations for socialization was not supported by the record because the assignation was based on the findings of other doctors the ALJ properly rejected. (Doc. No. 10-2 at 46, 62–73; see, e.g., id. at 65 ("Dr. Henderson said [Plaintiff] had some difficulty learning new information, that he could understand simple directions, and had moderate -- had some moderate limitations in that area and moderate limitations relating to people, so there's where I got moderate. I got it directly from [Dr. Henderson's opinion].")

The ALJ permissibly rejected the opinion of Don Edward Miller, Ph.D. on the basis that Dr. Miller only examined Plaintiff once, Plaintiff's IQ test was incomplete and not modified for a member of the Vietnamese population, and objective evidence did not support Dr. Miller's opinion. (Doc. Nos. 10-2 at 45; 10-8 at 110-18.) See 20 C.F.R. §§ 404.1527(c)(3), (4).

Plaintiff argues that Elizabeth Dewart's[3] report clearly establishes that Plaintiff was suffering from severe symptoms of schizophrenia. (Doc. No. 14-1 at 10.) In her report, Nurse Practitioner (NP) Dewart noted that Plaintiff complained that he only got 2-3 hours of sleep per night in the last two weeks, and not at all the previous two weeks, and that he sometimes experienced nightmares. (Doc. No. 10-7 at 94.) Plaintiff denied auditory and visual hallucinations and he had a good appetite. (Id.) He presented clean and neat, had

---

[2] Plaintiff implies that Dr. Simonds determined that Plaintiff has an inability to perform simple and repetitive tasks. (Doc. No. 14-1 at 13–14.) However, the record indicates that Dr. Simonds found that Plaintiff would be able to perform simple repetitive work. See 10-2 at 72–73 ("[S]o there we have a limitation to, I would say, simple – very simple, repetitive tasks but no detailed or complex.")

[3] Plaintiff refers to Dr. Stewart's report but cites to a report by Elizabeth Dewart, who appears to be a nurse practitioner. (Doc. Nos. 10-7 at 94, 14-1 at 10, 21-1 at 12.)

an appropriate affect, his mood was euthymic, and his judgment was fair. (Id.) Accordingly, the ALJ did not commit reversible error in his consideration of NP Dewart's report.

Plaintiff notes that, in 2011, Dr. Trang Nguyen assessed Plaintiff with a GAF of 50. (Doc. No. 10-7 at 86). However, the document cited by Plaintiff is from 2001 rather than 2011 and falls outside the relevant period. (See id. at 85–86.)

Plaintiff argues that the ALJ did not take account of Dr. Guzman's report. (Doc. No. 14-1 at 11.) In this report, Dr. Guzman indicated that Plaintiff had a thought disorder and hallucinations and was disabled. (Doc. No. 10 at 497.) However, Plaintiff points to no treatment reports by Dr. Guzman that support the form report and UPAC treatment records indicate that Plaintiff's condition stabilized on medication as the ALJ noted above. Moreover, Dr. Guzman's May and July 2016 reports indicate that, although Plaintiff had not been sleeping as well, medication helped Plaintiff sleep, he had no side effect or behavioral problems, and that he was alert, near, calm, had linear thought process, and denied suicidal ideation or hallucinations. (Doc. No. 10-8 at 147–54.) Finally, the ALJ is not bound by one treating physician's opinion and may disregard that opinion when determining disability, and the failure of the ALJ to mention Dr. Guzman's report does not invalidate the ALJ's determination. See Batson, 359 F.3d 1190, 1195-96 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ." (citation omitted)).

Plaintiff argues that the ALJ did not properly consider Dr. James Grisolia's neurological evaluation of Plaintiff. (Doc. No. 14-1 at 19.) Dr. Grisolia indicates in his evaluation that "[Plaintiff] has a persistent disability, as outlined by Dr. Ning." (Doc. No. 10-7 at 136.) The ALJ noted that it was unclear whether Dr. Grisolia was familiar with the SSA's disability evaluation program or the evidence in the record. (Doc. Nos. 10-2 at 39; 10-7 at 136.) Moreover, the ALJ noted that whether Plaintiff was "severely disabled" is an issue reserved for the Commissioner, and accordingly Dr. Grisolia's statement that Plaintiff was severely disabled is not entitled to any special significant weight. (Doc. No.

10-2 at 39 (citing 20 C.F.R. §§ 404.1527(e)(1)(3), 416.927(e)(1)(3)). Accordingly, the ALJ did not commit reversible error in his consideration of Dr. Grisolia's examination.

**B. Plaintiff's Complaints of Disabling Symptoms**

Plaintiff argues that the ALJ's finding that Plaintiff was not credible was improper. (Doc. No. 14-1 at 21–24.) Defendant argues that Plaintiff fails to prove the ALJ committed reversable error in his evaluation of Plaintiff's subjective allegations of disabling symptoms. (Doc. No. 21 at 20–26.)

The Court agrees with Defendant. The ALJ must consider the claimant's symptoms in determining whether the claimant is disabled, as well as the extent to which the claimant's description of the symptoms can reasonably be accepted as consistent with other evidence. See 20 C.F.R. § 404.1529. When an ALJ discredits a claimant's testimony, the ALJ must "specific, clear, and convincing reasons." Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014). When determining the credibility of a claimant's testimony, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in the claimant's testimony, or inconsistencies between the claimant's testimony, conduct, daily activities, and medical or third-party testimony. Thomas, 278 F.3d at 958–59.

Here, the ALJ provided several reasons for rejecting Plaintiff's subjective complaint that he was unable to do any type of work. First, the ALJ noted that the medical record "indicates the [Plaintiff] is under treatment with stabilized symptoms." (Doc. No. 10-2 at 40.) See 20 C.F.R. §§ 404.1529(c)(3)(iv)–(vi) (when evaluating a claimant's symptoms, the agency considers, among other factors, the medication, treatment and any other measures taken to relieve the symptoms). As noted above, the ALJ relied on the treatment records from the UPAC and other sources that indicated that Plaintiff was able to complete basic tasks when his condition was stable. (See generally Doc. No. 10-2 at 42–47.) Second, the ALJ noted that the Plaintiff reported in his medical record in 2013 that "he wanted to be healthy[,] he was physically active, went to Buddhist temple regularly, and enjoyed reading." (Id. at 42.) See 20 C.F.R. § 404.1529(c)(3)(i) (when evaluating a claimant's symptoms, the agency considers, among other factors, the claimant's daily

activities). The ALJ also noted that Plaintiff had stated that he helped take care of his children by sometimes driving them to school, did small errands, and did household chores. (Doc. No. 10-2 at 42, 45–47.) Third, the ALJ noted that Plaintiff's complaints were inconsistent with doctor statements and opinions about his condition. (See generally Doc. No. 10-2 at 42–47.) See 20 C.F.R. § 404.1529(c)(3) ("The information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms.").

Accordingly, the Court concludes that the ALJ properly supported his rejection of Plaintiff's subjective complaint that he was unable to do any type of work with "specific, clear, and convincing reasons." Burrell, 775 F.3d at 1137; see also Molina, 674 F.3d at 1113 ("Even where [the claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

**C. Lay Witness Testimony**

Plaintiff argues that the ALJ improperly rejected lay testimony. (Doc. No. 14-1 at 19–20, 24–25.) Defendant argues that Plaintiff fails to prove reversable error with the ALJ's evaluation of the lay witness statements. (Doc. No. 21 at 26–27.)

The Court agrees with Defendant. SSA regulations "require the ALJ to consider testimony from family and friends submitted on behalf of the claimant . . . but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness." Molina, 674 F.3d at 1114 (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3)). "[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." Id.

Here, Plaintiff's son Kevin Nguyen reported that Plaintiff could not work because of exhaustion from insomnia. (Doc. No. 10-6 at 17.) Plaintiff's son also reported that Plaintiff would drive him and his sister to school on some days, had no problem with

personal care, would clean the table, dry clothes, and sometimes get groceries with him. (Id. at 17–21.) The ALJ noted that, aside from exhaustion resulting from insomnia, Plaintiff's son did not report symptoms of mental impairments. (Doc. No. 10-2 at 46.) The ALJ gave Plaintiff's son's report partial weight given that that it was supported by medical evidence that Plaintiff's condition stabilized with medical treatment. (Id.) Accordingly, the ALJ provided germane reasons for his evaluation of Plaintiff's son's report. See Molina, 674 F.3d at 1114.

The ALJ also addressed Plaintiff daughter Julie Nguyen's testimony. (Doc. No. 10-2 at 46.) The ALJ noted that Plaintiff's daughter indicated in her testimony that she helped him with his medication, that he took monthly injections at UPAC, that Plaintiff would sometimes drive around the neighborhood, and that he was always tired. (Id.) Accordingly, Plaintiff's daughter's testimony was similar to Plaintiff's son's report. See Molina, 674 F.3d at 1114 ("[I]f the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness.").

Accordingly, Plaintiff fails to prove reversible error in the ALJ's evaluation of Plaintiff's son's report and his daughter's testimony. See Molina, 674 F.3d at 1114 (citing 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3)).

## CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ did not commit reversible error in evaluating the medical record, Plaintiff's subjective complaints, and lay witness testimony. The Court therefore denies Plaintiff's motion for summary judgment, grants the Acting Commissioner's cross-motion for summary judgment, and affirms the ALJ's order.

**IT IS SO ORDERED.**

DATED: July 29, 2019

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT